**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

_____

MURRAY POTTER,

      Plaintiff,

vs.                                No. 2:20-cv-00823-KWR-KRS

DETECTIVE FRANK TORRES, and
CITY OF LAS CRUCES,

      Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court upon the Defendant Frank Torres' Motion for Summary Judgment on the Basis of Qualified Immunity as to Count 2 **(Doc. 79),** and Plaintiff's Motion to Strike Torres Declaration **(Doc. 94).**  Having reviewed the parties' pleadings and the relevant law, the Court finds that the Defendant Torres' motion for summary judgment **(Doc. 79)** is well-taken and, therefore, is **GRANTED.**  Plaintiff's Motion to Strike Mr. Torres' declaration **(Doc. 94)** is not well-taken and, therefore, is **DENIED.**  The Court therefore enters summary judgment in favor of Defendant Torres on Plaintiff's malicious prosecution claim (Count II).

Detective Frank Torres asserts qualified immunity and moves for summary judgment on the malicious prosecution claim (Count II) asserted against him.  Plaintiff was arrested after Det. Torres swore a probable cause affidavit, which was relied upon to issue a criminal complaint and arrest Plaintiff.  Plaintiff asserts that Det. Torres misstated facts in the affidavit and omitted facts from the affidavit which, if included, would have vitiated probable cause.

The Court concludes that summary judgment should be granted in favor of Defendant Torres on Plaintiff's malicious prosecution claim, for the following alternate reasons:

- Plaintiff has not shown a false statement in the affidavit, and those properly supported omitted facts, even if added back into the affidavit, do not vitiate probable cause;

- Plaintiff has not shown that Det. Torres had the requisite intent, i.e., recklessness or malice; and

- Plaintiff has not shown a violation of clearly established law or the lack of arguable probable cause.

Therefore, the Court will dismiss Count II.

## BACKGROUND

Plaintiff's wife, Constance Potter, called in a burglary, alleging that Mr. Baca stole a gun. After investigating the incident, Det. Torres drafted a statement of facts (the "affidavit") asserting that Plaintiff had in fact committed an assault by brandishing a gun at Mr. Baca.  Mr. Baca allegedly wrestled the gun from Plaintiff and fled.

The criminal complaint was issued, and Mr. Potter was arrested. The district attorney later dismissed the case. Plaintiff asserts that Defendant Frank Torres omitted exculpatory information, and misstated facts in the affidavit.

Plaintiff's complaint asserted the following claims:

Count 1: 42 U.S.C. § 1983 (False Arrest) (against Defendant Torres);

Count 2: 42 U.S.C § 1983 (Malicious Prosecution) (against Defendant Torres);

Count 3: 42. U.S.C. § 1983 (Negligent Supervision and Training)(against Defendant City of Las Cruces).

Count 1 was dismissed pursuant to an unopposed motion.  **Doc. 34** (unopposed motion)**; Doc. 35** (stipulated order).

## FACTS[1]

### I.   <u>Burglary Call Out</u>.

Around 1:45 in the morning on April 13, 2017, Detective Frank Torres received a call from Mesilla valley Regional Dispatch authority advising him to proceed to 2505 Desert Drive in Las Cruces in reference to a call over a burglary.  **Doc. 95, UMF 1.**

When Det. Torres arrived at 2505 Desert Drive, he was briefed by LCPD officer Stephanie Carabajal, and her supervisor Sergeant Jaramillo.  **Doc. 79 at 3, UMF 2; Doc. 95 at 3 (undisputed).**  Detective Torres recorded the briefing and his subsequent interviews with witnesses on a digital audio recorder.  **Doc. 79 at 3, UMF 3 (undisputed).**

Sergeant Jaramillo characterized the victim's report as "Code 24", meaning it was suspicious and speculated it might have been a "dope rip", an attempt to steal or rip-off drugs, based on information that another officer provided to him about Mr. Potter.  **Doc. 79 at 4, UMF 4 (undisputed).** Officer Carabajal also characterized Mr. Potter's report as a "super sketchy story." **Doc. 79 at 4, UMF 5.**

Officer Carabajal reported the incident to the Las Cruces Police Department ("LCPD") as an attempted robbery, and had called out for a detective to investigate the incident further.  **Doc. 79 at 4, UMF 6** (undisputed).  Detective Torres learned during the briefing that the victim of the alleged robbery was Mr. Potter, and Mr. Potter's wife, Constance Potter, had identified the suspect as Anthony Baca.  **Doc. 79 at 4, UMF 7** (undisputed).

Detective Torres had never met the Potters before, but he had investigated a case in which LCPD recovered a shotgun the couple reported was stolen.  **Doc. 79 at 4-5, UMF 8.**  As part of

---

[1] Defendant's asserted material facts are largely admitted, or otherwise not *genuinely* disputed.  Disputes concerning the facts are noted where relevant.

that prior investigation, he had spoken on the phone with Mrs. Potter, and learned that Mr. Potter had mental health issues.

After Officer Carabajal and Sergeant Jaramillo briefed Det. Torres, Det. Torres interviewed Mr. Potter and Mrs. Potter.  **Doc. 79 at 5, UMF 9 (undisputed).** During the interview, Mr. Potter told Det. Torres as follows:[2]

a.  he was asleep when the back doorbell rang sometime around 1:15 a.m.  UMF 10(a) (undisputed).

b.  he went to the door, and the suspect ("the guy that robbed me") said something about people who wanted to meet him and "rubbish like that" UMF 10(b) (undisputed);

c.  He did not know the name of the suspect.  UMF 10(c) (undisputed);

d.  He said to the suspect: "Who the hell are you talking about."  UMF 10(d) (undisputed);

e.  He did not feel comfortable talking to the suspect without a weapon so he went to get a gun.  UMF 10(e) (undisputed);

f.  The suspect was still outside the back door at this point.  UMF 10(f) (undisputed).

g.  Mr. Potter left and came back with a gun.  UMF 10(g) (undisputed)

h.  The suspect came into the house.  UMF 10(h).  Plaintiff disputes this fact, but not genuinely.  Although Mrs. Potter told Det. Torres that Mr. Baca was not invited in and forced his way in, she was not an eyewitness and was not present during the encounter. Doc. 95 at 4 (response to UMF 10(h) Mrs. Potter said "he pretty much

---

[2] To be clear, the following describes what Mr. Potter *told* Det. Torres.

forced his way in"); Doc. 79.  UMF 11 (Mrs. Potter was not present and not an eyewitness); Doc. 95 UMF 11 (undisputed).

i.    The suspect started describing people who wanted to meet Mr. Potter.  UMF 10(i) (undisputed)

J.    Mr. Potter did not believe the suspect.  UMF 10(j) (undisputed)

k.    Mr. Potter did not point the gun at the suspect.  He held the gun in this left hand pointing the barrel down at the ground.  UMF 10(k) (undisputed).

l.    He said to the suspect: "You son of a bitch, you stole our … TV set."  UMF 10(l) (undisputed).

m.    The suspect reached for the gun and started wrestling with Mr. Potter for the gun. UMF 10(m).

n.    The suspect did not punch or kick Mr. Potter, but shoved him around as they were wrestling.  UMF 10(n).

o.    The suspect outweighs Mr. Potter by 200 pounds and ultimately wrestled the gun from him, leaving marks on Mr. Potter's hand.  UMF 10(o).

p.    The suspect walked out the back door with the gun.  UMF 10(p).

q.    The suspect had stolen a TV set from them in the past.  UMF 10(q).

r.    The gun was a Smith & Wesson "Lady Smith", 38-special.  UMF 10(r).

s.    The suspect had parked his vehicle in the back of the property facing inwards, and Mr. Potter was able to see how the suspect was parked by looking out the back door.  UMF 10(s).

Mrs. Potter informed Detective Torres that she was asleep during the entire incident and only knew what happened based on what her husband told her afterwards.  **UMF 11** (undisputed).

Mrs. Potter identified the suspect by name as Anthony Baca or Anthony Rodriguez. *Id.* **UMF 12.** (undisputed).

Mrs. Potter asserts that Mr. Baca had previously stolen a television, which she surmised because he was the only one who had visited them before it went missing, and he was seen loading something into the back of his truck. **Doc. 79 at 7, UMF 13** (undisputed). Mrs. Potter acknowledged to Det. Torres that she could not say what he loaded onto his truck. **Doc. 79 at 7, UMF 14** (undisputed).

Det. Torres had an evidence technician photograph the back door of the Potters' home, both exterior and interior views, the back hallway, and the kitchen area. The technician also swabbed the exterior door handle for touch DNA residue. **Doc. 79 at 7, UMF 15.**

Detective Torres noted that there was no sign of forced entry at the back door. **Doc. 79 at 7, UMF 16; Doc. 79-2 at 3, ¶ 5.** He also noted that the back door had a large "door lite" through which the occupants could see anyone standing outside, and was covered by an exterior screen door. **UMF 17**. He also noted that the back door and the outer screen door were both fitted with deadbolt locks. **Doc. 79 at 7, UMF 18; Doc. 79-1 at 40-41.**

Mr. Potter did not tell Det. Torres during the interview that the suspect menaced him or caused him to believe he was in imminent danger of being deprived of his property before he left to arm himself. **Doc. 79, UMF 19.** Mr. Potter also did not tell Det. Torres that the suspect pushed the back door or the exterior door open to let himself in after Mr. Potter left to arm himself. **Doc. 79 at 8, UMF 20.**

After Det. Torres left the Potters, he interviewed the suspect Anthony Baca who had been detained at a residence at 1905 Stanton Ave. in Las Cruces. **Doc. 79 at 8, UMF 21.** Mr. Baca stated that he went over to Mr. Potter's house to collect some money that was owed to him for the

delivery of cocaine and methamphetamine. Mr. Potter had allegedly written him a check which had bounced. *Id.* **at UMF 27**. He stated that Mr. Potter pulled a gun on him. **Doc. 79 at 8, UMF 24.** Mr. Baca stated that Mr. Potter let him and his girlfriend into his home. He stated that Mr. Potter pulled a gun on him, and he disarmed Mr. Potter but did not steal his gun. *Id.* **at UMF 26.** Mr. Baca described what happened as follows:

    a.    he rang the back doorbell two times, and Mr. Potter opened the door and invited him in.

    b.    he explained that the check had bounced, and Mr. Potter excused himself to go to the garage to check his safe.

    c.    He could hear beeping sounds and the sound of something being unlocked.

    d.    Mr. Potter returned and suggested they go into the kitchen.

    e.    Mr. Potter pulled a gun on him.

    f.    he struggled with Mr. Potter for the gun and disarmed him by slapping the gun from his hand.

    g.    he told his girlfriend they had to leave because Mr. Potter had pulled a gun on him;

    h.    They left through a side door.

    i.    They got in his truck and left.

    j.    As they were leaving, he heard a shot being fired.

**Doc. 79 at 9-10 UMF 28.**[3] Mr. Baca confirmed that Mrs. Potter was not present. **Doc. 79, UMF 29.** Mr. Baca was able to describe the layout of the Potters' home in detail.

    Det. Torres listened to a recording of his partner's interview with Ms. Clements, and heard her say the Potters' gun was in a flowerpot by the front porch. Ms. Clements confirmed several

---

[3] It is largely undisputed that these are the facts Mr. Baca told to Det. Torres. Although Plaintiff disputes whether he in fact invited Mr. Baca in, he does not dispute what Mr. Baca told Det. Torres.

statements that Mr. Baca made, including that they were invited into the Potters' home. **Doc. 79 at 10, UMF 33.** After Det. Torres listened to Ms. Clements' recorded statements, Det Torres told Mr. Baca that he would have taken the gun for his own safety if he had been in this situation. Mr. Baca admitted to taking the gun and Ms. Clements placed the gun in the flowerpot outside their home. **Doc. 79, UMF 39.**

## II.   <u>Probable Cause affidavit.</u>

That same day, Det. Torres swore a "Statement of Facts in Support of Complaint." The criminal complaint alleged Mr. Potter committed Aggravated Assault with a deadly weapon in violation of NMSA 1978 § 30-3-2A. **Doc. 79-1 at 44.** That statement of facts provided in part as follows:

> Undersigned further states the following facts on oath to establish probable cause to believe that the above-named Defendant did commit the crime charged.
>
> I.      Affiant is a full-time salaried Law Enforcement Officer with the Las Cruces Police Department's Criminal Investigation Division.
>
> II.     Affiant learned the following from: <u>Investigation</u>
>
> A.      That on the morning of the aforementioned date Constance Potter called 911 and reported that a male named Anthony Baca who was in the company of a female      arrived at her residence located at 2505 Desert Drive.
> B.      That Ms. Potter informed the dispatcher that Baca entered her residence and that her husband, the defendant confronted Baca and held him at gunpoint.
> C.      That Baca took the gun away from the defendant and that Baca and the female then left.
> D.      That police officers subsequently responded to Anthony Baca's residence and located the handgun belonging to the defendant along with four rounds of ammunition; the gun and ammunition were in a plastic bag.
>
> III.    Affiant learned the following from: <u>Anthony Baca</u>
>
> A.      That on the morning of the aforementioned date he and his girlfriend went to the defendant's residence. He stated that he was there to collect money that the defendant owed him.
> B.      That on arrival he rang the defendant's doorbell and the defendant answered the door and invited him and his girlfriend to enter the home.

C.   That he told the defendant that a $350.00 check he had paid him with had bounced and that the defendant owed him the money.

D.   That the defendant went into the garage at which time he heard beeping noises as if the defendant was accessing his safe.

E.   That the defendant then went back into the residence where Baca was waiting for the defendant. He stated that the defendant then reached into his waistband with his left hand and pulled out a handgun and pointed it at him.

F.   That he became scared and immediately grabbed at the defendant's hands and took the gun away.

G.   That he and his girlfriend drove back to his residence at 1995 Stanton where he unloaded the gun and gave the gun to his girlfriend; his girlfriend then placed the gun in a ceramic pot in front of their home.

IV.   Affiant learned the following from: <u>Amanda Clements</u>

A.   That she is Anthony Baca's girlfriend.

B.   That she and Anthony drove over to an old man's house because Anthony was going to collect some money.

C.   That on arrival they rang the doorbell and the old man opened the door and invited them in. She said that Anthony and the man walked into the kitchen while she waited in another room.

D.   That while she's waiting she could hear Anthony and the old man talking and soon they started to argue. She stated that she then heard them yelling at each other.

E.   That Anthony goes to her and tells her that they're leaving. Anthony told her that the old man pointed a gun at him and that he had to slap the gun out of the man's hand. She stated that Anthony took the gun from the man and they drove back home to her residence (at 1995 Stanton Avenue).

F.   That when they arrived at her residence she placed the gun in a plastic bag and put the bag in a ceramic pot in front of the house.

Based upon the above--mentioned information, Affiant petitions the Court to accept this Statement of Facts for the above-mentioned Defendant charge him with Aggravated Assault (Deadly Weapon)-1 Count contrary to 30-3-2A NMSA 1978.
**Doc. 79-1 at 44-45.**  Based on this affidavit, a criminal complaint was issued for one count of

Aggravated Assault with a deadly weapon, in violation of NMSA 1978 § 30-3-2A.

Mr. Potter was arrested on April 19, 2017. In December 2017, the case was dismissed

without prejudice.  **Doc. 79 at 16 UMF 61.**

**LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). As the Tenth Circuit has explained, "mere assertions and conjecture are not enough to survive summary judgment." *York v. AT&T*, 95 F.3d 948, 955 (10th Cir. 1996). To avoid summary judgment, a party "must produce specific facts showing that there remains a genuine issue for trial and evidence significantly probative as to any [material] fact claimed to be disputed." *Branson v. Price River Coal Co*., 853 F.2d 768, 771-72 (10th Cir. 1988) (quotation marks and citations omitted).

"A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1306 (10th Cir. 2017) (quotation marks and citation omitted).

When making this determination, the Court keeps two principles in mind. First, while the Court must draw all "reasonable inferences … in the light most favorable to the non-moving party*," id*. at 1261, that party's "version of the facts must find support in the record," *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). Second, the Court's role is not to weigh the evidence or decide any issues of credibility, but to assess the threshold issue of whether a genuine issue exists as to material facts requiring a trial. *See Liberty Lobby*, 477 U.S. at 249, 255.

**DISCUSSION**

I.   **Qualified Immunity.**

Det. Torres has asserted the defense of qualified immunity, which shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

When a defendant moves for summary judgment on the basis of qualified immunity, the plaintiff bears a heavy two-fold burden. *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001); *Romero v. Story*, 672 F.3d 880, 884 (10th Cir. 2012). The plaintiff must put forward evidence showing that (1) "the defendant's actions violated a constitutional…right," and (2) "the right at issue was clearly established at the time of the defendant's unlawful conduct." *See Medina*, 252 F.3d at 1128 (internal quotations omitted); *Davis v. Clifford*, 825 F.3d 1131, 1135 (10th Cir. 2016). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Medina*, 252 F.3d at 1128.

## II.     <u>Plaintiff did not show a constitutional violation.</u>

To assert his claim for malicious prosecution, Plaintiff must show that Defendant violated his constitutional rights under the Fourth Amendment by falsifying statements in an affidavit or omitting information from the affidavit which if included would have vitiated probable cause. The Court finds that Plaintiff has not shown a constitutional violation, because he did not demonstrate (1) any material false statements in the affidavit or material omitted statements, (2) did not show a lack of probable cause, and (3) did not show that Det. Torres acted with malice.

**A.**     **Plaintiff alleges a malicious prosecution claim, arguing that Det. Torres submitted an arrest warrant lacking probable cause, in violation of the Fourth Amendment.**

Plaintiff asserts a malicious prosecution claim.  Plaintiff alleges that Det. Torres violated the Fourth Amendment through *Franks v. Delaware*, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) by falsifying or omitting material information in an affidavit supporting an arrest warrant.

Plaintiff's malicious prosecution claim is based in the Fourth Amendment, but the "starting point" for the analysis is the common law elements of malicious prosecution.  *Wilkins v. DeReyes*, 528 F.3d 790, 797 (10th Cir. 2008).  These elements are:

> (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.

*Id.* at 799.  At issue in this case are probable cause and malice elements.

However, "the ultimate question in such a case is whether the plaintiff has proven the deprivation of a constitutional right," here his Fourth Amendment right to be free of seizure without probable cause.  *Wilkins v. DeReyes*, 528 F.3d 790, 797 (10th Cir. 2008).  "Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime." *Wolford v. Lasater,* 78 F.3d 484, 489 (10th Cir.1996).  This requires "something more than a bare suspicion." *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011) (citation and internal quotation marks omitted).

"Affiants seeking arrest warrants violate the Fourth Amendment when they knowingly, or with reckless disregard for the truth, include false statements in an affidavit, or knowingly or recklessly omit from it information which, if included, would vitiate probable cause." *Puller v.*

*Baca,* 781 F.3d 1190, 1197 (10th Cir. 2015).  "In such a situation, we measure probable cause by (1) removing any false information from the affidavit, (2) including any omitted material information, and then (3) inquiring whether the modified affidavit establishes probable cause for the warrant." *Id.*  In other words, Plaintiff must show (1) the omitted information was material in that it would have vitiated probable cause, and (2) Det. Torres acted with recklessness in omitting the information.  *Kapinski v. City of Albuquerque*, 964 F.3d 900, 905 (10th Cir. 2020).

Here, the criminal complaint charged Plaintiff with aggravated assault with a deadly weapon in violation of NMSA 1978 § 30-3-2A. "Aggravated assault consists of . . . unlawfully assaulting or striking at another with a deadly weapon . . . ." § 30-3-2A.  Assault consists of "any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery."  § 30-3-1(B).

**B.      Plaintiff has not made a showing that Det. Torres falsified statements in the affidavit, or omitted material information.**

Initially, Det. Torres argues that Plaintiff has not shown that he falsified or omitted material information. At the summary judgment stage, Plaintiff may not rely on allegations in the complaint but must support his factual assertions by citations to the record.  This is true even in the qualified immunity context. The Court finds that many of the alleged false statements or omissions are not supported by the record, were not from a trustworthy source, or were not known by Det. Torres. Fed. R. Civ. P. 56(c)(1); *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S. Ct. 2674, 2676, 57 L. Ed. 2d 667 (1978) (party must make preliminary showing that statements in affidavit were intentionally or recklessly false); *United States v. Rodriguez,* 739 F.3d 481, 485 n. 2 (10th Cir. 2013) (probable cause analysis based on facts known to officer which were reasonably trustworthy).

Plaintiff argues that the following information was known by Det. Torres but omitted from the affidavit:

A.      The initial call was for a burglary at the Plaintiff's home;

B.      it was after 1:00 am when Mr. Baca arrived at Plaintiff's home unannounced;

C.      Plaintiff reported recognizing Mr. Baca because he had previously stolen a TV from his home;

D.      Mr. Baca had been trying to lure Plaintiff outside the home by telling him that girls wanted to meet him;

E.      Plaintiff alleged Mr. Baca had forced his way in, and that he had not invited Mr. Baca in;

F.      Plaintiff reported telling Mr. Baca to get out;

G.      Plaintiff told Mr. Baca to get out of the house; and

H.      Mr. Baca had a prior felony conviction.

**Doc. 95 at 22** (listing alleged omitted or false material).

As Defendant Torres argues, there are potentially two facts material to justifying the use of force: that (1) Mr. Potter did not invite Mr. Baca in, and (2) that he told Mr. Baca to leave. However, Mr. Potter never told Det. Torres that Mr. Baca had forced his way in. Mr. Potter never told Det. Torres that he felt he was in imminent danger, menaced or that he was threatened before he left to arm himself. **Doc. 78 at UMF 19, 20.**  Det. Torres examined the door and found no evidence of forced entry.  **Doc. 79 at UMF 16.**  Moreover, *Mrs. Potter* said that Mr. Potter "told [Mr. Baca] to get out."  **Doc. 95, Ex. 5 at 9:12-14.**  Even so, Mr. Potter did not allegedly tell Mr. Baca to leave until *after* he already went to get his gun. *See* **Doc. 95, Ex. 5 at 8:13-16, 9:12-14**

(Mr. Potter had his gun, then allegedly told Mr. Baca to leave).  Mrs. Potter was not present and was not an eyewitness.  **Doc. 79 UMF 11.**

Moreover, Mrs. Potter merely *suspected* that Mr. Baca had stolen the TV during a prior visit and did not see him take it.  **Doc. 79, UMF 14.**  She appears to assert that she noticed the TV was gone after a prior visit by Mr. Baca.

Plaintiff asserts that Det. Torres falsely swore that Plaintiff had invited Mr. Baca into his home.  The Court disagrees, as Det. Torres stated in his affidavit that *Mr. Baca* said he was invited in.  Mr. Baca had in fact told Det. Torres that he was invited in.  **Doc. 79-1, Ex. A at 45** (statement in affidavit that Mr. Baca stated he was invited in to the house); **Doc. 79 at 9, UMF 28 (a)** (Det. Torres learned from Mr. Baca that he was invited in), *citing* **Doc. 79-1, Ex A ¶ 63.**  Therefore, Plaintiff has not shown that any fact in the affidavit was false.

Plaintiff did not state to Det. Torres that (1) Mr. Baca forced his way in; (2) that Plaintiff did not invite Mr. Baca in; or (3) that he told Mr. Baca to leave the house before getting the gun.  Mrs. Potter, who was not an eyewitness, made the first statement.[4]  Officer Carabajal is the source of the other two statements, which Det. Torres disregarded in favor of a direct interview with Plaintiff.  However, even in the recorded video interview between Mr. Potter and Officer Carabajal, Mr. Potter did not tell Officer Carabajal that he did not invite Mr. Baca in, or that he told Mr. Baca to leave.  **Doc. 108 at 28 n.19, citing Doc. 95-13 at 5:19-6:9, 8:17-9:2.**

Det. Torres stated that he would not rely solely on the debriefing provided by Officer Carabajal, but instead would talk to the victim and look at the evidence.  **Doc. 108-3 at 272:9-273:6**

---

[4]     Plaintiff cites to Exhibit 5, 8:18-4, and Ex. 4 at 4:15-17 (debriefing from officer Stephanie Carabajal).  Under Exhibit 5, *Constance Potter* said that Mr. Baca forced his way in and was told to leave.  However, Mrs. Potter was not present during the incident.  **Doc. 79, UM 11; Doc. 95, Response to UMF 11** (undisputed).

**(Frank Torres Deposition).**  Here, Det. Frank Torres talked with all eyewitnesses, including Mr. Potter, Mr. Baca, and Ms. Clements. He also spoke with Mrs. Potter, who was not present and was not an eyewitness.

Moreover, the record does not reflect that Mr. Potter told Det. Torres that he felt personally menaced or that there was an imminent threat.  **Doc. 79 at 7, UMF 19**.  Plaintiff did not genuinely dispute this fact. Mr. Potter also did not report that the suspect pushed the back door open to let himself in after Mr. Potter left to arm himself.  **Doc. 79 at 8, UMF 20.**

In sum, the Court finds that the record does not support Plaintiff's assertion that there were false or misleading statements in the affidavit.  Moreover, as explained above, the undisputed record does not reflect that Plaintiff told Det Torres that (1) he did not invite Mr. Baca into his house or that (2) he told Mr. Baca to get out of house *before* he pulled out his gun.

**B.     Even adding in Plaintiff's properly supported facts, there was probable cause to support the affidavit.**

Alternatively, even if the Court added in Plaintiff's facts to the affidavit, they would not vitiate probable cause.  Therefore, Plaintiff has not shown that Det. Torres violated the Fourth Amendment by swearing an affidavit without probable cause.

The facts asserted in the affidavit provided a substantial probability that Mr. Potter committed an aggravated assault against Mr. Baca.  In his affidavit Det. Torres stated that (1) Mr. Potter answered the door, (2) according to Mr. Baca, Mr. Potter invited Mr. Baca and Ms. Clements inside, and (3) Mr. Potter confronted Mr. Baca with a gun. The affidavit stated that Mr. Baca wrestled the gun away from Plaintiff, and Mr. Baca and Ms. Clements left.  Mr. Baca stated that when Plaintiff pointed the gun at him, he became scared and grabbed the gun from Mr. Potter. Mr. Baca and Ms. Clements then went back to their home and placed the gun in a ceramic pot in

front of their house, which Det. Torres found.  Similarly, Ms. Clements stated Mr. Potter opened the door and invited them in.  She heard Mr. Baca and Plaintiff argue.  Mr. Baca then told her they were leaving, that Plaintiff pointed a gun at him and he grabbed the gun from him.  **Doc. 79-1, Ex. A, at 44.** There was no physical evidence of forced entry.  These statements create a substantial probability that an aggravated assault occurred.

Plaintiff's omitted facts which are properly supported in the record, if added into the affidavit, do not vitiate probable cause. Det. Torres did not learn facts which would indicate that Plaintiff was justified in pulling a gun on Mr. Baca.  **Doc. 79-1, Ex. A, at ¶¶ 105(a)-(d), 111, 117(a)-(b), 119-120**.  Even if Det. Torres included in the affidavit that (1) Mr. Baca followed Plaintiff into his home without an express invitation and (2) Plaintiff took out his gun and told Mr. Baca to leave, that would not change the probable cause analysis.  There would still be a substantial probability that an aggravated assault occurred.  As explained previously, Plaintiff did not specify any facts which would justify pulling a gun on Mr. Baca, and he did not tell Mr. Baca to leave before he pulled the gun.

Moreover, the material omitted facts came from Mrs. Potter, or Officer Carabajal.  Det Torres gave little weight to a non-eyewitnesses, and instead conducted his own interview of the witnesses.  Mrs. Potter's statements conflicted with both Mr. Baca's and Ms. Clements' statements. Conflicting statements by witnesses (or non-witnesses) do not vitiate probable cause. Probable cause "does not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt." *Gerstein v. Pugh,* 420 U.S. 103, 121 (1975), *quoted in Woods v. Neumeyer*, 77 F.3d 494 (10th Cir. 1996); *Wright v. City of Philadelphia*, 409 F.3d 595, 603 (3d Cir. 2005) (probable cause "does not require that officers

correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate. The officers did not believe Wright's explanation for her entry. Although they may have made a mistake, their belief was not.").

Plaintiff appears to assert that Det. Torres failed to rule out that Plaintiff was acting in self-defense or defense of his habitation.  However, Det. Torres did not have the burden of ruling out self-defense in his probable cause affidavit.  *Craft v. White*, 840 F. App'x 372, 378 (10th Cir. 2021) (New Mexico law), *citing Sanchez v. Labate*, 564 F. App'x 371, 374 (10th Cir. 2014) (noting that New Mexico law does not require arresting officers to consider a claim of self-defense in determining whether they have probable cause).

Alternatively, assuming Det. Torres was required to consider self-defense, self-defense or defense of property or habitation was not conclusively established in the record. "[A]n affirmative defense to a crime negate[s] probable cause only when the defense was 'conclusively' established." *Sanchez v. Labate*, 564 F. App'x 371, 373–74 (10th Cir. 2014), *citing Estate of Dietrich v. Burrows,* 167 F.3d 1007, 1012 (6th Cir.1999); *Hodgkins ex rel. Hodgkins v. Peterson,* 355 F.3d 1048, 1061 (7th Cir.2004).

Moreover, officers need not "rule out a suspect's innocent explanation for suspicious facts." *District of Columbia v. Wesby*, ––– U.S. –––, 138 S. Ct. 577, 588, 199 L.Ed.2d 453 (2018). "So probable cause existed even if some of the evidence had suggested self-defense." *Craft v. White*, 840 F. App'x 372, 378 (10th Cir. 2021) (New Mexico law).  This is true even where an assault or battery claim has an element of "unlawfulness", as here.  *Craft v. White*, 840 F. App'x 372, 378 (10th Cir. 2021) (finding probable cause even where a defense was possible where plaintiff which charged with New Mexico battery, which requires "unlawful touching").

Alternatively, even if Det. Torres were required to rule out self-defense or defense of property, the record before Det. Torres did not suggest those defenses were appropriate. New Mexico law recognizes self-defense only when the conduct involves a reasonable, necessary response to an "immediate danger." NMRA, Crim. UJI 14-5182 (self defense instruction), *cited in Craft v. White*, 840 F. App'x 372, 378 (10th Cir. 2021). Based on the information known to Det. Torres from trustworthy sources, there was no evidence of immediate danger. Moreover, the record does not reflect that (1) Mr. Baca was about to take any property or that it was necessary to use the gun to stop Mr. Baca from doing so or (2) that force was reasonable or necessary to defend property. NM R CR UJI 14-5180 (defense of property instruction). There are no facts in the record to indicate that Mr. Baca was threatening Plaintiff, or that Mr. Baca needed to use force to protect property, before Plaintiff took his gun out. Rather, Mr. Baca was standing outside when Plaintiff left to get his gun.

Therefore, even adding Plaintiff's properly supported facts into the affidavit, the Court finds that they would not vitiate probable cause.

### C.     Plaintiff failed to show malice or recklessness.

Alternatively, even if Plaintiff had shown that the omitted statements would have vitiated probable cause, he has not created a genuine dispute of material fact that Det. Torres acted with malice or recklessness.

"The malice element of a Fourth Amendment malicious prosecution claim focuses on the defendant officer's knowledge or state of mind." *Mglej v. Gardner*, 974 F.3d 1151, 1171 (10th Cir. 2007). To establish malice or recklessness, "there must exist evidence that the officer in fact entertained serious doubts as to the truth of his allegations." *Stonecipher*, 759 F.3d at 1142. A reviewing judge may infer recklessness from "circumstances evincing obvious reasons to doubt

the veracity of the allegations." *Beard*, 24 F.3d at 116. But this is not a mandatory or automatic inference. *Kapinski v. City of Albuquerque*, 964 F.3d 900, 908 (10th Cir. 2020). Malice "may be inferred if a defendant causes the prosecution without arguable probable cause." *Stonecipher*, 759 F.3d at 1146.

Here, the affidavit recited certain statements by Mr. Baca and Ms. Clements. There is no evidence that Det. Torres had serious doubts as to the truth of those statements.

Plaintiff argues that Det. Torres acted recklessly because he (1) failed to include all relevant information in the affidavit and (2) he unreasonably believed the testimony of individuals who were found with Plaintiff's stolen gun. **Doc. 95 at 24.** The Court finds that neither argument establishes recklessness or malice in this case. Nothing in the record suggests that Det. Torres' omission of certain facts in the affidavit was motivated by a belief that no probable cause existed.

Even if the Court assumes Det. Torres did not include all material facts in his affidavit, the Court does not infer recklessness as the circumstances do not evince obvious reasons to doubt the veracity of the allegations. *Kapinski v. City of Albuquerque*, 964 F.3d 900, 908 (10th Cir. 2020), citing *Beard*, 24 F.3d at 116 (A reviewing judge may infer recklessness from "circumstances evincing obvious reasons to doubt the veracity of the allegations."). Here, the record lacks any evidence of Det. Torres' recklessness or malice. As explained above, Mr. Potter's allegations, even if included in the warrant, would not vitiate probable cause. There is no evidence that Det. Torres seriously doubted the truth of the allegations or doubted whether there was probable cause. The record simply reflects that Det. Torres believed two eyewitnesses and the circumstantial and physical evidence over the statements of Mr. Potter and Mrs. Potter (who was not an eyewitness).

Plaintiff argues that malice may be inferred because he unreasonably believed the statements of Mr. Baca and Ms. Clements. Here, Det. Torres weighed competing statements by

Mr. Baca and Ms. Clements on one hand, and Mr. and Mrs. Potter on the other, and found Mr. Baca's story more credible. Upon reviewing the record, this was not unreasonable.

Moreover, Plaintiff does not allege that Det. Torres held any animus towards Mr. Potter, and Plaintiff does not so argue. *See* **Doc. 95 at 24** (discussing recklessness).

Plaintiff argues that Det. Torres misstated that he invited Mr. Baca into his home. As the Court noted above, there was no misstatement, and even if there were, it was not based on a reckless disregard of the truth. "A proven misstatement can vitiate an affidavit only if it is established that the misstatement was the product of deliberate falsehood or of reckless disregard for the truth." *United States v. Martin,* 615 F.2d 318, 320 (5th Cir. 1980). Here, Det. Torres reasonably credited the statements of Mr. Baca and Ms. Clements over Mrs. Potter.

Therefore, the Court concludes that Plaintiff has not created a genuine dispute of material fact that Det. Torres acted recklessly or with malice.

**III.    Plaintiff did not show a violation of clearly established law.**

Alternatively, Plaintiff has not shown that there was a lack of *arguable* probable cause, or a violation of clearly established law.

"A right is clearly established only if reasonable officers would understand that their conduct violates the Constitution." *Craft v. White*, 840 F. App'x 372, 375 (10th Cir. 2021), *citing Mocek v. City of Albuquerque*, 813 F.3d 912, 922 (10th Cir. 2015). "We do not define clearly established law at a general level, for a constitutional right is clearly established only if there is an on-point Tenth Circuit opinion, Supreme Court precedent, or a clear weight of authority from other courts." *Id.*

"In the context of a qualified immunity defense on an unlawful search or arrest claim, the Court considers whether a defendant violated clearly established law by asking whether there was

'arguable probable cause' for the challenged conduct." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014).  "Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists."  *Id.,* citing *Cortez v. McCauley,* 478 F.3d 1108, 1120 (10th Cir.2007). The Tenth Circuit has applied the arguable probable cause analysis to a malicious prosecution claim based on lack of probable cause supporting the filing of a criminal complaint, as here.  *Stonecipher*, 759 F.3d at 1147; *see also Garcia v. Escalante*, 678 F. App'x 649, 656 (10th Cir. 2017) (applying arguable probable cause analysis to malicious prosecution claim).

Here, there was at the very least arguable probable cause.  Plaintiff argues that Det. Torres erred by crediting the statements of Mr. Baca and Ms. Clements over Mr. Potter.  To the extent this was error (which the Court does not believe it was), it did not rise to the level of violating clearly established law.  It was objectively reasonable to believe there was probable cause under the circumstances.  Moreover, Plaintiff has not shown that Det. Torres acted with malice in filing the statement of facts supporting the criminal complaint.

Alternatively, Plaintiff generally argued that "it was a clearly established violation of plaintiff's Fourth and Fourteenth Amendment rights to knowingly or recklessly omit from an arrest affidavit information which, if included, would have vitiated probable cause." *Stewart v. Donges*, 915 F.2d 572, 582-83 (10th Cir. 1990), *cited in* **doc. 95 at 24.**  The Court believes that this case citation is at a too high level of generality, and not tied to the facts of this case.  Therefore, Plaintiff has not satisfied his burden under the clearly established prong.

**III.**  **Court declines to Strike Det. Torres' declaration.**

Plaintiff moves to strike Det. Torres' twenty-five page declaration submitted in support of his summary judgment motion as a sham affidavit contrary to prior deposition testimony. **Doc. 94.** As explained below, the court declines to strike the declaration.

Courts may disregard an otherwise proper affidavit if the court first determines that the affidavit's purpose is to create a sham issue of material fact, but there is no authority to disregard the affidavit simply because it contradicts an affiant's prior sworn testimony. *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1218 n.3 (10th Cir. 2014). "Sham affidavits, though "unusual," arise when a witness submits an affidavit that contradicts the witness's prior testimony." *Id.,* citing *Law Co. v. Mohawk Const. & Supply Co.,* 577 F.3d 1164, 1169 (10th Cir.2009). Although "[a]n affidavit may not be disregarded solely because it conflicts with the affiant's prior sworn statements," the Court may nonetheless disregard a conflicting affidavit if it "constitutes an attempt to create a sham fact issue." *Law Co.,* 577 F.3d at 1169 (quotations omitted). "In determining whether an affidavit creates a sham fact issue, [the Court] consider[s] whether: '(1) the affiant was cross-examined during his earlier testimony; (2) the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain.' " *Id.* (quoting *Ralston v. Smith & Nephew Richards, Inc.,* 275 F.3d 965, 973 (10th Cir.2001)).

Plaintiff points to three facts in Det. Torres' declaration which are allegedly inconsistent with his deposition testimony:

- Defendant Torres was familiar with the Potters;

- There were multiple facts suggesting that Mr. Potter was acting in defense of his habitation; and

- Defendant Torres did not review the statement Officer Carabajal took from Plaintiff prior to executing the affidavit.

**Doc. 94 at 2.**  The Court finds that none of these statements in Det. Torres' declaration in support of summary judgment conflicted with his deposition testimony.

Plaintiff argues that Det. Torres misstated in his deposition testimony that he did not remember having a conversation with Mrs. Potter prior to the incident in this case, which contradicts a recording made at the scene of the callout on April 13, 2017.  In the audio recording, he stated that everyone in the Criminal Investigations Division has dealt with the Potters before. **Doc. 94-1 at 205:13-18**.  He stated he had dealt with the Potters before, and that he had heard from Mrs. Potter that Mr. Potter had mental health issues.  This statement was captured on a tape-recording Det. Torres made when he was being briefed on the call out. However, at the deposition he acknowledged he must have had a memory in 2017 of a prior interaction with Constance Potter, based on the recording.  A mere failure of recollection does not create a "sham affidavit."

In his Declaration, Det. Torres asserts that he had not *met* the Potters before the Robbery call-out, but acknowledges that he spoke to Mrs. Potter on the phone.[5]  Det. Torres summarized his interactions with the Potters in his declaration.  **Doc. 79-1 at ¶¶ 18-25.**  Here, Det. Torres' declaration is supported by evidence which he reviewed, including his call-out.  *See* **Doc. 79-1 at 25,** *citing* **Ex. C to MSJ at 9:07-9:11**.  Therefore, there is nothing to indicate that Det. Torres lied in his Declaration and the declaration merely clarifies his knowledge of the Potters.  In sum, in both his deposition testimony and in his declaration he acknowledged that at the time of the call

---

[5] "I believe that I must have spoken with Constance over the telephone at some point during the Jesus Martinez investigation because I told Officer Carabajal during the briefing on April 13, 2017, that I had heard from Mr. Potter's wife that he was "58", meaning he had mental health issues of one form or another. Media Exh. C to MSJ at 9:07 – 9:11**."  Doc. 79-1, ¶ 25.**

out in 2017, he must have had a memory of talking to Constance Potter in a prior case. **Doc. 101 at 3.**

Moreover, the Court agrees with Det. Torres that in both his deposition and in his declaration he stated he did not learn anything during the call-out to suggest Plaintiff was acting in self-defense or defense of property when he pulled a gun on Mr. Baca. Each of the facts identified by Plaintiff were acknowledged by Det. Torres both in his deposition testimony and in his declaration. **Doc. 79-1 at ¶¶ 33(a), (e)-(h), (l), (o)-(p); Doc. 101 at 5-7.** The Court agrees that Plaintiff is really making a legal argument that Det. Torres should have concluded that these facts established a lawful basis for Plaintiff to pull a gun on Mr. Baca. This is not a proper basis to consider striking an affidavit.

Plaintiff asserts that Det. Torres' Declaration conflicts with his deposition testimony regarding whether he reviewed Officer Carbajal's lapel camera videotape of the interview she conducted with Plaintiff. The Court disagrees. In both his declaration and deposition testimony, he stated he did not review that lapel camera footage prior to drafting his statement of probable cause. **Doc. 79-1 at ¶¶ 125, 130; doc. 94-1 at 118:17-23.**

Therefore, the Court does not believe there are any material inconsistencies between his declaration and prior deposition testimony. To the extent there are inconsistencies, the Court has considered the three factors above and conclude that Det. Torres' declaration in support of summary judgment is not a "sham affidavit." Rather, in his declaration Det. Torres had the opportunity to clear up confusion or address his recollection.

Finally, Plaintiff argues that the Declaration should be stricken because in it Det. Torres discusses what he believed he would need to establish probable cause to charge Plaintiff with aggravated assault. This may be relevant to whether Det. Torres acted with malice, an element of

malicious prosecution.  However, the Court has not considered the legal argument therein in reaching its conclusion, but has relied upon the motion for summary judgment, response, and reply.

Alternatively, the Court would deny the motion to strike because Plaintiff did not seek concurrence prior to file the motion to strike as required by local rules. D.N.M.LR-Civ. 7(a)("Movant must determine whether a motion is opposed, and a motion that omits recitation of a good-faith request for concurrence may be summarily denied.").

## IV. <u>Count III against the City of Las Cruces</u>

The parties did not address Count III, the *Monell* claim, against Defendant City of Las Cruces. A *Monell* claim is sometimes dismissed when the Court finds that there was no constitutional violation by an individual.  For example, a *Monell* claim asserting inadequate supervision or training "cannot be made out against a supervisory authority absent a finding of a constitutional violation by the person supervised." *Webber v. Mefford,* 43 F.3d 1340, 1344–45 (10th Cir.1994). *Taylor v. Meacham*, 82 F.3d 1556, 1564 (10th Cir. 1996); *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1191 (10th Cir. 2020), *cert. denied sub nom. Washington Cnty. v. Crowson*, 211 L. Ed. 2d 98, 142 S. Ct. 224 (2021). If the City of Las Cruces believes the *Monell* claim should be dismissed, it should file a motion.

## CONCLUSION

 For the reasons stated above, Plaintiff has not overcome qualified immunity as to his malicious prosecution claim. There was no constitutional violation because (1) there was probable cause and (2) Plaintiff did not show that Det. Torres acted with malice or recklessness.  Moreover, Plaintiff has not shown a violation of clearly established law.  Finally, there is no genuine dispute as to any material fact and Det. Torres is entitled to judgment as a matter of law as to Plaintiff's malicious prosecution claim.

**IT IS THEREFORE ORDERED** that the Defendant's Motion for Summary Judgment Based on Qualified Immunity as to Count 2 (**Doc. 79**) is **GRANTED** for the reasons described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Defendant Torres' Declaration (**Doc. 94**) is **DENIED**; and

**IT IS FINALLY ORDERED** that Plaintiff's Unopposed Motion to Accept as Timely filed Plaintiff's Amended Response (**Doc. 96**) is **GRANTED.**

**IT IS SO ORDERED.**

**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**